**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KUBOTA CORPORATION and KUBOTA ENVIRONMENTAL SERVICES CO., LTD., | ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | |
| v. | ) ) | Case No.  12 C 6065 |
| SHREDDERHOTLINE.COM COMPANY, INC., GLOBAL DEVELOPMENT INTERNATIONAL, INC., and DAN SCOTT BURDA, | ) ) ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On August 1, 2012, Plaintiffs Kubota Corporation and Kubota Environmental Services,

Co., Ltd. (collectively "Plaintiffs") brought the present seven-count Complaint against

Defendants Shredderhotline.com Company, Inc., Global Development International, Inc., and

Dan Scott Burda (collectively "Defendants"), alleging trademark violations under the Lanham

Act, 15 U.S.C. § 1051, *et seq*., a copyright infringement claim in violation of the Copyright Act

of 1976, 17 U.S.C. § 101, *et seq*. and state law claims.  On February 6, 2013, Defendants filed

their Second Amended Counterclaims under the Copyright Act, the Lanham Act, and state law.

Before the Court is Plaintiffs' motion for partial summary judgment brought pursuant to Federal

Rule of Civil Procedure 56(a) as to Counts II, IV, V, VI, and VII of the Complaint and

Counterclaims I, II, V, VI, VII, VIII, and IX.

For the following reasons, the Court grants in part and denies in part Plaintiffs' motion

for partial summary judgment.  Specifically, the Court grants Plaintiffs' summary judgment

motion as to their copyright infringement claim as alleged in Count V of the Complaint. On the other hand, the Court denies Plaintiffs' motion in part because there are genuine disputes of material fact concerning the parties' trademark claims alleged in Counts II and IV and Counterclaims V and VIII. Also, because there are genuine disputes as to the material facts comprising Plaintiffs' state law claims, the Court denies Plaintiffs' motion for summary judgment in regard to Counts VI and VII and Counterclaims VI and VII. Finally, because Defendants seek to withdraw their Counterclaims I, II, and IX, the Court dismisses these counterclaims pursuant to Rule 41(a). Defendants must seek leave of Court to reinstate Counterclaims I, II, and IX.

## BACKGROUND

### I.    Northern District of Illinois Local Rule 56.1

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment.

2

*See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632. Also, at summary judgment, the Court may only consider evidence that would be admissible at trial, although the evidence need not be admissible in form at this procedural posture. *See Harney v. City of Chicago,* 702 F.3d 916, 922 (7th Cir. 2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II.     Relevant Facts

### A.     The Parties

Plaintiff Kubota Corporation ("Kubota") is a Japanese corporation with its principal place of business in Naniwa-Ku, Osaka, Japan. (R. 64, Pls.' Rule 56.1 Stmt. Facts ¶ 1.) Plaintiff Kubota Environmental Service Co., Ltd. ("Kubota Environmental") is a wholly-owned subsidiary of Kubota Corporation and is a Japanese limited liability corporation with its principal place of business located in Tokyo, Japan. (*Id*.) In 2010, Kubota Environmental entirely assumed Kubota Corporation's industrial shredder business. (*Id*.)

Defendant Shredderhotline.com Company, Inc. ("Shredderline") is a registered Illinois corporation with its principal place of business listed in the Illinois registration records as 707

North Park Street, Streator, Illinois. (*Id.* ¶ 2.) Defendant Global Development International, Inc. ("Global Development") is a registered Oregon corporation with its principal place of business listed in state registration records as 12350 SW Tooze Road, Wilsonville, Oregon. (*Id.*) Defendant Dan Scott Burda is an individual who, on information and belief, lived and was domiciled at 705 North Park Street, Streator, Illinois, during the relevant time period. (*Id.*)

## B. Plaintiffs' Business Activities

Kubota sells farm equipment, industrial equipment, and construction equipment in the United States, and in the fiscal year that ended March 31, 2013, Kubota's sales revenues in the United States were approximately $2.36 billion. (*Id.* ¶¶ 6, 7.) In addition, Kubota has continuously used the trademark "Kubota" in the United States since the late 1960s and has maintained United States trademark registrations since at least 1971. (*Id.* ¶ 8.) Specifically, Kubota owns the following incontestable U.S. registrations for the trademark "Kubota": No. 922,330 (registered October 19, 1971); No. 1,775,620 (registered June 8, 1993); No. 2,793,694 (registered December 16, 2003); No. 2,837,680 (registered May 4, 2004); and No. 2,916,907 (registered January 11, 2005 ). (*Id.* ¶ 9.) Since the early 1970s, Kubota has sold more than 300 industrial vertical shredders in Japan and Asia. (*Id.* ¶ 11.) Industrial shredders are large, heavy-duty machines used for reducing the size of metal, wood, paper, tires, and other waste. (*Id.* ¶ 10.)

## C. Defendants' Activities Regarding the Kubota Trademark

Defendants, who also market and sell industrial shredders, launched the website eidalkubota.com in 2009. (*Id.* ¶¶ 2, 12.) An October 4, 2012 screen shot of Defendants' website eidalkubota.com, and an August 3, 2012 screen shot of Defendants' website

globalrecyclingequipment.com/joint-venture/kubota state: "Global CG Group & Kubota, Share in Joint Venture of Resource Recycling." (*Id.* ¶ 13.) Furthermore, an August 3, 2012 screen shot of the shredderhotline.com's "Company Resume" page states that Defendants have either a joint venture, license, or agreement with Kubota Corporation, Osaka Japan, related to shredder development. (*Id.* ¶ 15.) Similarly, the August 3, 2012 screen shot of shredderhotline.com's Company Resume page states that the Eidal line of shredders and recycling systems is licensed to Kubota Heavy Industries. (*Id.* ¶ 16.) At his deposition, Mr. Burda, who is the President of Shredderhotline and Global Development, sometimes referred to as the "Burda Group," testified that the word "Kubota" when used on the eidalkubota.com website refers to Kubota Corporation of Osaka, Japan. (*Id.* ¶ 14.) It is undisputed, however, that no joint venture or license exists between Kubota and Defendants, no written agreements exist between Kubota and Defendants, and Kubota and Defendants have no role in each other's businesses. (*Id.* ¶ 17.)

Moreover, an August 2012 screen shot of the Company Resume page on shredderhotline.com states that Defendants have sold "Eidal Technology to Kubota Group, Osaka Japan" and an August 2012 screen shot of the "Customer List" on Defendants' website globalrecyclingequipment.com states that Kubota Heavy Industries is Defendants' customer and that Defendants have sold it shredders, shredder parts, or consulting services. (*Id.* ¶ 19.) Again, it is undisputed that Defendants have not sold shredders, shredder parts, technology, or consulting services to Kubota. (*Id.* ¶ 20.) Nonetheless, Mr. Burda contends that the term "Kubota" is of substantial importance to the Burda Group's advertising campaign. (R. 64, Defs.' Rule 56.1 Stmt. Add'l Facts. ¶ 12.)

**D.     Defendants' Activities Regarding Allegations of Cybersquatting**

 On September 8, 2009, Defendant Global Development registered the domain names eidalkubota.com, eidal-kubota.com, kubotaeidal.com, kubota-eidal.com, kubota-eidal-shredder.com, and kubota-eidal-shredders.com listing Defendant Burda as the administrative and technical contact for the domains.  (Pls.' Stmt. Facts ¶ 24.)  On November 21, 2010, Global Development registered the domain names kubotagrinder.com, kubota-grinder.com, kubotagrinders.com, kubota-grinders.com, kubotashredder.com, kubota-shredder.com, kubotashredders.com, and kubota-shredders.com listing Mr. Burda as the administrative and technical contact for the domains.  (*Id.* ¶ 25.)  After Plaintiffs filed this lawsuit on August 1, 2012, Mr. Burda registered additional domain names, including global-eidal-kubota.com, global-eidal-kubota-shredders.com, globalkubota.com, global-kubota.com, global-kubota-eidal.com, and kubotaglobal.com on August 12, 2012.  (*Id.* ¶ 26.)

As of June 24, 2013, the following domain names automatically forwarded visitors to the home page of eidalkubota.com when a visitor entered this domain name in a website browser — eidal-kubota.com, kubotaeidal.com, kubota-eidal.com, kubota-eidal-shredder.com, kubota-eidal-shredders.com, kubota-grinder.com, kubota-grinders.com, kubota-shredder.com, and kubota-shredders.com.  (*Id.* ¶ 29.)  As of June 24, 2013, the following domain names automatically forwarded visitors to the home page of Defendants' website globalrecyclingequipment.com, which promotes Defendants' industrial shredders, when a visitor entered these domain names in a web browser —  kubotagrinder.com, kubotagrinders.com, kubotashredder.com, and kubotashredders.com.  (*Id.* ¶ 30.)  Likewise, as of June 24, 2013, the following domain names automatically forwarded visitors to the home page of Defendants' website shredderhotline.com,

which promotes Defendants' industrial shredders, when a visitor entered these domain names in

a web browser — global-eidal-kubota.com, global-eidal-kubota-shredders.com,

globalkubota.com, global-kubota.com, global-kubota-eidal.com, and kubotaglobal.com. (*Id*. ¶

31.)

Defendants admit that they registered these Kubota-related domain names to increase

Defendants' name recognition and improve their placement in Internet search engine results.

(*Id*. ¶ 27.) Defendants nonetheless claim that they have used the mark "Eidal-Kubota" in

connection with the marketing of industrial shredders in the United States for more than 30

years, and thus have the full right to register domain names incorporating their long-standing

Eidal-Kubota mark. (Defs.' Stmt. Add'l Facts ¶ 1.)

### E.    Defendants' Activities Regarding Allegations of Copyright Infringement

Kubota owns and/or co-owns the copyrights to the text, photographs, graphics, and

videos on its English-language High-Speed Vertical Shredders web pages. (Pls.' Stmt. Facts ¶¶

32, 33.) Also, Defendants admitted that they posted text, videos, graphics, and/or photographs

that they downloaded from the Kubota English Language website to their own websites. (*Id*. ¶

34.) Further, Defendants admit that they do not have a license from Plaintiffs to download and

use the text, videos, graphics, and/or photographs from the Kubota English Language website.

(*Id*. ¶ 35.)

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.

56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

## I.    Defendants' Defenses

### A.    Laches

The Court first addresses Defendants' laches defense as to Plaintiffs' Lanham Act claims. The equitable doctrine of "[l]aches addresses delay in the pursuit of a right when a party must assert that right in order to benefit from it." *Hot Wax, Inc. v. Turtle Wax, Inc.,* 191 F.3d 813, 820 (7th Cir. 1999). "For laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time." *Chattanoga Mfg., Inc. v. Nike, Inc.,* 301 F.3d 789, 792 (7th Cir. 2002) (internal citation omitted); *see also Hot Wax,* 191 F.3d at 820. As the Seventh Circuit teaches, "unwarranted delay is not enough to foreclose relief" because "[t]here must also be prejudice — reliance, to one's detriment, on a belief that delay signaled approval of the acts in question." *Blue Cross & Blue*

*Shield Ass'n v. American Express Co.,* 467 F.3d 634, 640 (7th Cir. 2006). The Court "enjoys considerable discretion in determining whether to apply the doctrine of laches to claims pending before it." *Hot Wax,* 191 F.3d at 819.

"Addressing the first part of the analysis, it is clear that a plaintiff must have actual or constructive notice of the defendant's activities." *Chattanoga Mfg.,* 301 F.3d at 793. Here, Defendants argue that the Burda Group has openly used the "Kubota" trademark in the United States on its shredders for approximately 30 years. Despite this argument, the undisputed facts reveal that Defendants have never sold an industrial shredder branded "Eidal-Kubota" or with any other designation using the term "Kubota." (Pls.' Stmt. Facts ¶¶ 38, 39.) Thus, Defendants' argument that they openly used the Kubota trademark on shredders for 30 years is without merit. It is also undisputed that Defendants launched their website eidlakubota.com in 2009,[1] and, thereafter registered approximately twenty domain names incorporating the term "Kubota" from 2009 until at least 2012. Evidence in the record further shows that once Plaintiffs discovered this conduct, Plaintiffs sent Mr. Burda a cease-and-desist letter sometime in February 2010. Defendants, however, never answered the letter. Plaintiffs followed-up with this lawsuit in August 2012. Even viewing this evidence in a light most favorable to Defendants, Plaintiffs did not delay in taking against Defendants.

Moreover, even if Defendants could establish that Plaintiffs had actual or constructive knowledge of the Burda Group's activities, Defendants have failed to present evidence

---

[1] Defendants' argument that Plaintiffs were on constructive notice of Defendants' activities because the Burda Group created its first website in 1987 does not save the day because the world wide web was not developed until 1989. *See* Wikipedia, Tim Berners-Lee, http://en.wikipedia.org/wiki/Tim_Berners-Lee (last visited Nov. 18, 2013); CERN, The Birth of the Web, http://home.web.cern.ch/about/birth-web (last visited Nov. 18, 2013).

establishing prejudice.  Instead, in support of their laches argument, Defendants maintain that it would cost a great deal of time, money, and effort to take remedial measures.  (Defs.' Stmt. Add'l Facts ¶¶ 7, 23.)  Defendants' factual assertions do little to establish detrimental reliance, *see Blue Cross,* 467 F.3d at 640, especially in light of the undisputed fact that the Burda Group never sold an industrial shredder with the designation "Kubota" or "Eidal-Kubota."  Moreover, the Burda Group's removal of the alleged false associations on their websites and other adjustments to their websites and domain names would not entail massive expenditures of time, energy, or money as Defendants' claim.  Accordingly, the Court, in its discretion, will not apply the equitable doctrine of laches under the circumstances.  *See Hot Wax,* 191 F.3d at 819.

### B.     First Use

In addition, Defendants argue that because the Burda Group has been using the mark "EidalKubota" for more than 30 years, they have superior rights to the trademark "Kubota."  In the absence of, or prior to, federal registration, whether a party has a protectible interest in a trademark is established by the first actual use of the mark in commerce.  *See Central Mfg., Inc. v. Brett,* 492 F.3d 876, 881 (7th Cir. 2007) ("it is not the fact of registration that matters so much as the use of the mark in commerce"); *see also Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F.3d 427, 434 (7th Cir. 1999) ("party who first appropriates the mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it").

Here, it is undisputed that Plaintiffs have used the Kubota trademark in commerce in the United States since the late 1960s and registered the trademark "Kubota" on October 19, 1971. Plaintiffs' registration creates a rebuttable presumption that Plaintiffs have a protectable interest in the mark "Kubota" because the registration pre-dates Defendants' claim that the Burda Group

10

has used the Kubota mark since 1983. *See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) ("registration provides prima facie evidence of the registrant's exclusive right to use the mark in commerce."); *Central Mfg.,* 492 F.3d at 881 (same). This presumption can be rebutted by competent evidence setting forth certain defenses or defects as listed in 15 U.S.C. § 1115(b). *See Park 'N Fly,* 469 U.S. at 196; *Central Mfg.,* 492 F.3d at 881. Defendants, however, fail to set forth competent evidence pursuant to Section 1115(b), and thus fail to overcome the presumption of Plaintiffs' exclusive rights to the mark "Kubota." Therefore, Defendants' "first use" argument is unavailing.

## II.     Lanham Act Claims

### A.     False Designation of Origin Claims — Count II and Counterclaim V

Plaintiffs contend that the Court should grant their summary judgment motion as to their Lanham Act false designation of origin claim, also known as a false association claim, as alleged in Count II, and Defendants' Counterclaim V, which seeks declaratory judgment as to Plaintiffs' false association claim. *See* 15 U.S.C. § 1125(a)(1)(A). Plaintiffs base their false association claim on the undisputed evidence that Defendants stated the following on their websites: (1) Defendant Global Development and Kubota were in a joint venture; (2) that Eidal shredders licensed certain rights to Kubota, and (3) Defendants sold shredders, shredder parts, and consulting services to Kubota. The undisputed evidence further reveals that Kubota and Defendants never had a joint venture and that Defendants never licensed anything to Kubota. Indeed, it is undisputed that Plaintiffs and Defendants have no role in each other's businesses. Moreover, Mr. Burda admitted at his deposition that the word "Kubota" when used on the eidalkubota.com website refers to Kubota Corporation of Osaka, Japan.

11

"The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." *Park 'N Fly,* 469 U.S. at 198.  Section 43(a)(1)(A) of the Lanham Act, states in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ...

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

To establish a Lanham Act false designation of origin claim, Plaintiffs must show that they (1) own a protectible mark, and (2) that Defendants' use of this mark is likely to cause confusion among consumers.  *See Segal v. Geisha NYC LLC,* 517 F.3d 501, 506 (7th Cir. 2008); *Rust Env't & Infrastructure, Inc. v. Teunissen,* 131 F.3d 1210, 1214 (7th Cir. 1997); *Bobak Sausage Co. v. A & J Seven Bridges, Inc.,* 805 F.Supp.2d 503, 512 (N.D.Ill. 2011).  Before turning to the likelihood of confusion element, the Court must first determine whether the mark at issue is sufficiently distinctive to warrant prima facie protection as a trademark.  *See Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir. 1992) (quoting *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.,* 781 F.2d 604, 610 (7th Cir. 1986)).

When determining whether a trademark is protected under the Lanham Act, courts recognize five categories in descending order of distinctiveness — fanciful, arbitrary, suggestive, descriptive, and generic.  *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct.

12

2753, 120 L.Ed.2d 615 (1992); *H-D Michigan, Inc. v. Top Quality Serv., Inc.,* 496 F.3d 755, 759 (7th Cir. 2007). Fanciful, arbitrary, or suggestive marks "are distinctive in the sense that secondary meaning is likely to develop, as a result of which any duplicate use of the name is likely to breed confusion about the product's source." *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001). On the other hand, "[g]eneric and descriptive marks ordinarily cannot function as trademarks, but a descriptive mark may warrant protection if it has acquired secondary meaning." *H-D Michigan,* 496 F.3d at 759-60.

As discussed above, Plaintiffs first registered the trademark "Kubota" on October 19, 1971. Further, Defendants have not rebutted the presumption that Plaintiffs have a protectable interest in the mark "Kubota." *See* 15 U.S.C. § 1115(b). Because Plaintiffs have a registered trademark, they are entitled to one of two presumptions: (1) that the registered mark "Kubota" is not merely descriptive or generic; or (2) if the mark is descriptive, the mark is accorded secondary meaning. *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 (7th Cir. 2001). Because Defendants have not argued or presented evidence that the "Kubota" mark is merely generic or descriptive, Plaintiffs are entitled to the presumption that its mark is protected by the Lanham Act under the first element of their false designation of origin claim.

Thus, the Court turns to the second element of Plaintiffs' false designation of origin claim, namely, whether Defendants' use of the mark "Kubota" is likely to cause confusion among consumers. *See Two Pesos,* 505 U.S. at 780 ("the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks"). Here, Plaintiffs have not presented sufficient evidence establishing the likelihood of confusion among consumers that would entitle them to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a). Instead, Plaintiffs

13

set forth the deposition testimony of Ted Pederson, Kubota's Vice President of Construction

Equipment and Manager of the United States Northern Division, who testified that he believes

Defendants' use of the Kubota trademark and the compound mark "Eidal-Kubota" are confusing

because of the uniqueness of the Kubota name and Kubota's long-time use of the Kubota mark

in the United States. (Pls.' Stmt. Facts ¶ 23.) Mr. Pederson's belief as to the likelihood of

confusion among consumers is undercut by the fact that he is not a consumer, but an employee

of Kubota.[2] Equally important, Plaintiffs fail to point to any other evidence or argument that

consumers are likely to be confused about the origin of the parties' products, which is ultimately

a question of fact for the jury. *See AutozZone, Inc. v. Strick,* 543 F.3d 923, 929 (7th Cir. 2008)

("That question of fact may be resolved on summary judgment only 'if the evidence is so

one-sided that there can be no doubt about how the question should be answered.'") (citation

omitted). Therefore, viewing the facts in a light most favorable to the non-movant Defendants

— as the Court is required to do at this procedural posture — the Court denies Plaintiffs'

summary judgment motion regarding Plaintiffs' false designation of origin claim alleged in

Count II and Defendants' declaratory relief claim in Counterclaim V.

### B.    Cybersquatting Claims — Count IV and Counterclaim VIII

Next, Plaintiffs maintain that the Court should grant summary judgment concerning their

cybersquatting claim alleged in Count IV of the Complaint and Defendants' declaratory

judgment counterclaim concerning this cybersquatting claim, namely, Counterclaim VIII. *See*

---

[2] The Seventh Circuit's recent decision in *Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, ___F.3d ___, 2013 WL 6017396 (7th Cir. Nov. 14, 2013), lends guidance to establishing the likelihood of confusion requirement in trademark cases, including a discussion of the use of statistical data.

14

15 U.S.C. § 1125(d)(1). Congress enacted the Anticybersquatting Consumer Protection Act ("ACPA") to combat "the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *MasterCard Int'l Inc. v. Trehan* 629 F.Supp.2d 824, 830 (N.D. Ill. 2009) (citation omitted); *see also Flentye v. Kathrein,* 485 F.Supp.2d 903, 914 (N.D. Ill. 2007). To establish their cybersquatting claim, Plaintiffs must show that: (1) they had a distinctive or famous mark at the time Defendants registered the domain name; (2) Defendants registered, trafficked in, or used a domain name that is identical or confusingly similar to Plaintiffs' mark; and (3) Defendants acted with bad faith to profit from that mark. *See MasterCard Int'l,* 629 F.Supp.2d at 830; *Vulcan Golf, LLC v. Google Inc.,* 254 F.R.D. 521, 528 (N.D. Ill. 2008). The ACPA also provides a safe harbor provision, namely, that bad faith "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii).

The parties dispute the third requirement under the ACPA, namely, whether Defendants acted in bad faith in tandem with whether the safe harbor provision applies under the circumstances. Plaintiffs can establish bad faith in numerous ways as outlined in a non-exhaustive list set forth in 15 U.S.C. § 1125(d)(1)(B)(1). *See uBID, Inc. v. GoDaddy Group, Inc.,* 623 F.3d 421, 435 (7th Cir. 2010). These factors include whether Defendants have rights in the trademark incorporated into the domain name, prior use of the domain name, and the extent to which the mark incorporated into the domain name is not distinctive or famous. *See* 15 U.S.C. § 1125(d)(1)(B)(1)(I, II, IX).

15

Plaintiffs maintain that Defendants acted in bad faith to profit from their registration and use of the domain names incorporating "Kubota" because only one of the domain names, eidalkubota.com, hosts an actual website, whereas the other domain names automatically redirect visitors to the eidalkubota.com website. Further, Plaintiffs point to the fact that Mr. Burda registered six of these domain names after Plaintiffs filed the present lawsuit in August 2012 — conduct that certainly raises issues of bad faith. Nonetheless, viewing the facts in a light most favorable to Defendants, there is evidence in the record that Mr. Burda believed that he had rights in the domain name based on the history of Eidal shredders. Accordingly, there is a genuine dispute as to the material fact of whether Defendants acted in bad faith with the intent to profit. *See Virtual Works, Inc. v. Volkswagen of Am., Inc.,* 238 F.3d 264, 268 (4th Cir. 2001) ("the most important grounds for finding bad faith 'are the unique circumstances of th[e] case, which do not fit neatly into the specific factors enumerated by Congress but may nevertheless be considered under the statute.'") (citation omitted). As such, the Court denies Plaintiffs' motion for summary judgment as to Count IV and Counterclaim VIII.

## III. Copyright Infringement Claim — Count V

In Count V of the Complaint, Plaintiffs allege a copyright infringement claim against Defendants as to text, photographs, drawings, and videos Defendants published on their websites. *See* 17 U.S.C. § 101, *et seq.* To establish their copyright infringement claim, Plaintiffs must show "(1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements of the work that are original." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (citation omitted). "Because defendants rarely admit to copying the works of others," *see id.*, "a plaintiff may prove copying by showing that the defendant had the opportunity to copy the

16

original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters v. West,* 692 F.3d 629, 633 (7th Cir. 2012).

Under the first element of a copyright infringement claim, Plaintiffs must present evidence that they own a valid copyright. As discussed in the Court's November 29, 2012 Order denying Defendants' motion to dismiss based on Plaintiffs' failure to register the copyrighted works with the United States Copyright Office, "foreign works" need not be registered with the U.S. Copyright Office. *See Golan v. Holder,* ___, U.S. ___, n.11, 132 S.Ct. 873, 882 n.11, 181 L.Ed.2d 835 (2012); *Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1302-04 (11th Cir. 2012). As the Court further explained in the November 2012 Order, whether Plaintiffs' text, photographs, graphics, and videos contained on their website are "foreign works" or "United States works" within the meaning of the Copyright Act is a question of fact best left for summary judgment. (R. 34, 11/29/12 Order, at 2-3.)

Here, Plaintiffs have presented undisputed evidence that Kubota owns and/or co-owns the copyrights to the text, photographs, graphics, and videos on its English-language High-Speed Vertical Shredders web pages. In particular, Plaintiffs set forth undisputed evidence that Kubota employees and a Kubota contractor created the graphics and materials and that Kubota has the exclusive copyrights with respect to some of the materials and that Kubota and the contractor agreed that Kubota could unilaterally assert the co-owned copyrights against third parties. (R. 27-1, Yamamoto Decl. ¶ 8.) Moreover, these materials were first published in January 2004 in Japan on Kubota's Japanese corporate website. (*Id.* ¶ 9.) Based on these facts, Plaintiffs have established that the text, photographs, graphics, and videos contained on their website are

17

"foreign works."  *See Kernel Records Oy,* 694 F.3d at 1304.

Also, Plaintiffs have established the second element of a copyright infringement claim because Defendants have admitted that they downloaded posted text, videos, graphics, and/or photographs from the Kubota English Language website and uploaded these materials to their own websites.  Further, Defendants admit that they do not have a license from Plaintiffs to download and use the text, videos, graphics, and/or photographs from the Kubota English Language website.  Therefore, construing the evidence and all reasonable inferences in Defendants' favor, Plaintiffs have established their copyright infringement claim as alleged in Count V.

Nevertheless, Defendants argue that Plaintiffs' copyright infringement claim in Count V is moot because Defendants took down the copyrighted materials from the Burda Group's websites and assert that they will not be republish these materials.  Plaintiffs, however, are seeking to enjoin Defendants from re-posting this material or using it in any other unauthorized ways in the future.  Thus, Defendants' promise that they will not republish these materials online does not moot this claim because Defendants have not met the heavy burden of persuading the Court that "there is no reasonable expectation that the wrong will be repeated."  *ADT Sec. Servs., Inc. v. Lisle-Woodridge Fire Protection Dist.*, 724 F.3d 854, 864 (7th Cir. 2013); *see also Friends of the Earth, Inc. v. Laidlaw Env'l Servs., Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

IV.     **State Law Claims**

A.     **Deceptive Trade Practices Act Claims — Count VI and Counterclaim VI**

In Count VI of the Complaint, Plaintiffs bring a claim pursuant to the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1, *et seq.*  Similarly, Defendants' Counterclaim VI seeks declaratory relief regarding Plaintiffs' UDTPA claim.  Under the UDTPA:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> ....
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another.

*See* 815 ILCS 510/2(a)(3); *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd.,* 384 Ill.App.3d 849, 865, 323 Ill.Dec. 507, 893 N.E.2d 981 (1st Dist. 2008).

Plaintiffs rely on the evidence that they presented in support of their Lanham Act false association claim to support their UDTPA claim.  As discussed above, there is a genuine dispute as to the material fact as to the likelihood of consumer confusion requirement.  *See* 815 ILCS 510/2(a)(3).  Therefore, the Court denies Plaintiffs' summary judgment motion as to the UDTPA claims set forth in Count VI and Counterclaim VI.

B.     **Common Law Trademark and Unfair Competition Claim — Count VII and Counterclaim VII**

In Count VII of their Complaint, Plaintiffs allege a trademark and unfair competition claim pursuant to Illinois common law.  Likewise, Defendants' Counterclaim VII seeks declaratory relief regarding Plaintiffs common law trademark claim.  A necessary element of Plaintiffs' trademark infringement and unfair competition claim under Illinois law is that there is

19

a likelihood of confusion among consumers. *See Autozone,* 543 F.3d at 929. Because there is a genuine factual dispute as to the likelihood of confusion among consumers, as discussed above, the Court denies Plaintiffs' motion for summary judgment in regard to Count VII and Counterclaim VII.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Plaintiffs' motion for partial summary judgment.

**Dated:** November 20, 2013

ENTERED

**AMY J. ST. EVE**
**United States District Court Judge**